Otis McNABB, Appellant,

v.

**TAYLOR OIL FIELD RENTAL COMPANY, Appellee.**

No. 14672.

Court of Civil Appeals of Texas.

San Antonio.

April 17, 1968.

Rehearing Denied May 29, 1968.

Michael W. Wagner, San Antonio, for appellant.

Burris & Burris, Alice, for appellee.

KLINGEMAN, Justice.

Suit by Taylor Oil Field Rental Company against Otis McNabb for breach of a hunting lease contract, for return of the unused portion of a cash lease rental of $7,500.00 paid in advance, and for damages for conversion of an electric water pump. The parties will be referred to herein as in the trial court. Trial was to the court without a jury and judgment entered in favor of plaintiff for $4,583.00 for the unused portion of the rent paid in advance, plus $85.00 for conversion of the water pump. No findings of fact or conclusions of law were requested or filed by the trial court.

Under date of September 1, 1966, plaintiff and defendant entered into the following lease contract:

"For and in consideration of the sum of Seven Thousand Five Hundred Dol-

lars ($7,500.00), received of Taylor Oil Field Rental Equipment Company, of Houston, I, Otis McNabb, have this date leased *for hunting purposes* the property known as Canelo Ranch, located in Kenedy County, Texas, comprising eight thousand (8,000) acres, more or less, for a term of twelve (12) months, said term commencing on the first day of September, 1966, and terminating on the 31st day of August, 1967." (Emphasis added.)

Defendant, by his second point of error, asserts that this cause should be reversed and rendered because the court erred in holding that defendant breached the lease contract.

■ In a non-jury case where no findings of fact or conclusions of law are filed by the trial court, judgment should be affirmed if there is evidence to support it on any theory of the case. City of Abilene v. Meek, 311 S.W.2d 654 (Tex.Civ.App.—Eastland 1958, writ ref'd); Western Woods Products Company v. Bagley, 274 S.W.2d 111 (Tex.Civ.App.—Texarkana 1954, Writ ref'd n. r. e.). See also Calvert, "No Evidence and Insufficient Evidence Points of Error," 38 Tex.Law Rev. 361, 362–365.

While the evidence with regard to breach of contract is contradictory in some respects, the testimony is undisputed that on or about January 21, 1967, defendant went to the hunting lease and removed plaintiff's lock from the gate on the premises and replaced it with defendant's own lock. Testimony is further undisputed that on January 22, 1967, defendant returned plaintiff's lock to plaintiff's agent. Plaintiff's agent testified that by changing the lock defendant locked in two of plaintiff's customers who were hunting on the premises, and that such action caused plaintiff embarrassment and inconvenience. The evidence also shows that for a period of approximately one week while the quail hunting season was still going on, plaintiff

had no key to such lock and that a key was not sent to plaintiff until after plaintiff's attorney had written defendant that they considered the lease breached and made demand upon plaintiff for return of the unused portion of the lease rental.

■ If the landlord's conduct is such as to materially interfere with the beneficial use of the premises and tenant leaves as a result thereof, it is a constructive eviction. Silberstein v. Laibovitz, 200 S.W.2d 647 (Tex.Civ.App.—Austin 1947, no writ); Nabors v. Johnson, 51 S.W.2d 1081 (Tex. Civ.App.—Waco 1932, no writ); 35 Tex. Jur.2d, Landlord and Tenant, § 69.

■ The trial court's implied finding that defendant breached the contract is sufficiently supported by evidence of probative value and defendant's second point of error is overruled.

Defendant's first point of error asserts that the trial court erred in failing to apply the correct measure of damages. The judgment of the trial court decreed "that the plaintiff, TAYLOR OIL FIELD RENTAL COMPANY, recover of and from the defendant, OTIS McNABB, the sum of $4,583.00, being the unused portion of the rent paid in advance, * * *."

Plaintiff asserts that this is the correct measure of damages for the reason that the cash rental paid in advance for the term beginning September 1, 1966, and ending August 31, 1967, was $7,500.00, which amounts to a monthly rental of $625.00; that defendant breached the lease on January 21, 1967, constituting a period of seven months and ten days total breach, and that, based on a monthly rental of $625.00, this would aggregate $4,583.00. However, there is no evidence that the rental was based on a monthly rate.

■ Generally, the injured lessee may recover from his landlord the difference between the market rental value of the leasehold for the unexpired term of the lease and the reserved rentals stipulated

therein. B. F. Avery & Sons' Plow Co. v. Kennerly, 12 S.W.2d 140 (Tex.Comm'n App.1929); Drummet v. Beal, 354 S.W.2d 701 (Tex.Civ.App.—Eastland 1962, writ ref'd n. r. e.); Langham's Estate v. Levy, 198 S.W.2d 747 (Tex.Civ.App.—Beaumont 1947, writ ref'd n. r. e.); Walcott v. McNew, 62 S.W. 815 (Tex.Civ.App.1901, no writ); 35 Tex.Jur.2d, Landlord and Tenant, § 77.

Defendant, after being questioned by plaintiff's attorney about various details of the negotiations relative to this hunting lease, including discussion as to who would be allowed to hunt thereon, the type of facilities to be furnished, what utilities were to be supplied, and other matters, also testified that in such negotiations there was a discussion that deer, turkey, quail, javelina, whitewing and doves were to be hunted. He further testified that the whitewing hunting season was confined to the month of September, mourning dove season from about October 1 to sometime in November, deer season from November 16 to December 31, quail from December 1 to January 31, and that there was no other game there to hunt.

■ Our Courts take judicial notice of the public statutes of this State, and the open season or period of time in which it is lawful to hunt game animals and game birds, including turkey, whitewing doves mourning doves, quail, javelina and deer, is set forth in the Penal Code of Texas, Art. 878 et seq., Vernon's Ann.P.C. A review of such statutes reveals that the open season for all such game animals and game birds above referred to, falls between the period of time from September 1 to January 31 of the following year. It is apparent that even if the lease was breached on January 21, 1967, there was no remaining open hunting season during the term of the lease, except approximately ten days of the quail season.

■ It is the object and purpose of the law to compensate a tenant who has been wrongfully evicted from the premises for the actual loss he has sustained. B. F. Avery & Sons' Plow Co. v. Kennerly, supra. Since the entire rent in this case had been paid in advance, the proper measure of damage to be recovered by plaintiff from defendant is the market rental value of the leasehold for the unused term of the lease. There is no evidence in the record as to the market rental value of this hunting lease from January 21, 1967, to August 31, 1967, the unexpired term of the lease. Under the law and the evidence, the measure of damages applied by the trial court was incorrect, and the record does not support a judgment in the amount of $4,583.00 for the unused portion of the rent paid in advance. Defendant's first point of error is sustained.

Defendant asserts two other points of error which, if sustained, would require a reversal and remand, but in view of our holding herein we do not deem it necessary to pass on such points.

■ Defendant does not complain of that portion of the judgment which awards plaintiff $85.00 for conversion of the electric water pump, and that portion of the judgment is affirmed and severed from said cause. Except for such severed portion, the judgment of the trial court is reversed and the cause remanded for a new trial.

CADENA, Justice (dissenting).

I would affirm the judgment below.

There are, of course, obvious differences between the liabilities and rights of parties to a hunting "lease" and the relations between a landlord and tenant under an ordinary lease. But assuming, despite these differences, that the same rules are applicable in case of a total breach by the "lessor," the trial judge committed no error.

Here, for a single payment of $7,500.00, paid in advance, appellee acquired the right to hunt on the Canelo Ranch for a period of one year. Since it is undisputed that appellant wrongfully interfered with the

right of appellee to enjoy the benefits of the contract, the proper measure of recovery should be the "rental" paid in advance for the period following the date of the "eviction."

In the true landlord-tenant relationship, the rule seems to be that a tenant who has paid rent in advance for a period extending beyond the time of eviction is entitled to recover the proportionate share of the advance payment made by him. Everson v. Albert, 261 Mich. 182, 246 N.W. 88 (1933); 3 Thompson, Real Property, § 1135, p. 520 (1959 Replacement); 52 C.J.S. Landlord and Tenant § 461, p. 194; 32 Am.Jur., Landlord and Tenant, § 265, p. 250. While there appear to be no Texas cases considering the right of an evicted tenant to recover rentals paid in advance, in Nolan v. Stauffacher, 3 Will.Civ.Cas. Ct.App. § 372 (1888), it was held that a landlord who evicted the tenant could not recover for rental which the tenant had agreed to pay in advance, although the eviction occurred after the advance rental was payable.